IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,

v.                                                                  No. CV 07-803 WJ/CEG
                                                                        CR 03-127 WJ

MAURICIO MICHEL,

    Defendant/Movant.

AMENDED PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before me on Mauricio Michel's ("Michel") pro se motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, his First Supplemental Motion to Vacate, and the United States' responses. Docket nos. 1, 8, 22, 24. For the reasons below, I find that Michel's trial counsel was ineffective in failing to file a motion to suppress or joining in a motion filed by the co-defendant in the case. As such, I recommend the habeas petition be granted.

I.  Background

A.  Procedural Background

On January 7, 2002, a federal grand jury in the District of New Mexico returned a seven-count indictment charging Clinton Laughrin ("Laughrin") and Michel with violations of 18 U.S.C. § 922(g)(1), 26 U.S.C. §§ 5841, 5845(a)(2), 5861(d) and (l) and 18 U.S.C. § 2. See United States v. Laughlin, et al., 2:03-cr-127-WJ, docket no. 1. Michel was named in Count 2, felon in possession of a firearm under 18 U.S.C. § 922(g)(1); Count 3, possession of a sawed-off shotgun under 26 U.S.C. §§ 5841, 5845(a)(2), and 5861(d); and Count 4, possessing and aiding and abetting the possession of a firearm not identified by a serial number in violation of 26

1

U.S.C. §§ 5845(a)(2) and 5861(l).  Id.

On March 7, 2003, Michel appeared with counsel for arraignment, but the matter was continued as his counsel, the Federal Public Defender, had been appointed to represent co-defendant Laughlin.  Id., docket nos. 17, 19.  On the same day, Bernadette Sedillo ("Ms. Sedillo") was appointed to represent Michel.  Id., docket no. 24.  On March 10, 2003, Michel was arraigned with his new trial attorney, and pled not guilty to the charges.  Id., docket no. 21.

On July 22, 2003, shortly before the commencement of trial in the case, visiting United States District Judge William F. Downes heard a motion to suppress that had been filed by Laughrin.  Id., docket no. 67.  Ms. Sedillo did not join in the motion to suppress or file a separate motion to suppress on behalf of her client.  After the hearing, Judge Downes denied the motion and the case proceeded to trial.  Id.  Laughlin and Michel were tried together, and on July 24, 2003, the jury returned guilty verdicts against both defendants on all counts.  Id., docket no. 69.  In calculating his sentence, the District Court classified Michel as an armed career criminal, pursuant to 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4, sentenced him to 240 months on each of the three counts of conviction, and ordered the sentence to run concurrently with Michel's Texas state sentence, due to expire in 2012.  Id., docket nos. 104, 110.

Both defendants filed separate appeals before the United States Court of Appeals for the Tenth Circuit.  See U.S. v. Laughrin, 438 F.3d 1245 (10th Cir. 2006) and U.S. v. Michel, 446 F.3d 1122 (10th Cir. 2006).  Co-defendant Laughlin challenged the District Court's denial of his motion to suppress the firearm found in his car, arguing the traffic stop was unconstitutional.  See Laughrin, 438 F.3d at 1246.  On March 2, 2006, the Tenth Circuit issued an opinion reversing Laughrin's denial of the motion to suppress, and Counts 1, 3, and 4 of the Indictment, as they pertained to Laughrin, were reversed because the Court held Laughrin's motion to

suppress the original stop should have been granted by the District Court.  Id. at 1248.  The Tenth Circuit remanded Laughrin's case for re-sentencing on Counts 5, 6, and 7.  Id. at 1249.

After the Tenth Circuit reversed the District Judge's denial of Laughrin's suppression motion, Ms. Sedillo, still representing Michel on appeal, filed a motion to supplement appellate issues on March 8, 2006.  Appellant's Motion to Supplement Issues on Appeal, Michel (No. 04-2214 at docket entry 1896078).  The United States opposed the motion to supplement.  Appellee's Response to Motion to Supplement Issues on Appeal, Michel (No. 04-2214 at 1905055).  The Tenth Circuit, noting Michel did not file a motion to suppress, did not join Laughrin's motion, and did not raise the issue on appeal prior to oral argument, denied the motion to supplement appellate issues.  Michel, 438 F.3d at 1127 n.1.  The Tenth Circuit found "'[a] motion to suppress evidence must be raised prior to trial; the failure to so move constitutes a waiver . . . .'" Id. (citing United States v. Meraz-Peru, 24 F.3d 1197, 1198 (10th Cir. 1994) and FED. R. CRIM. PRO. 12(e)).  The Court further indicated that although it did recognize circumstances in which it might apply the plain error rule to suppression issues raised for the first time on appeal, it would not do so in Michel's case because the issue "was not raised in the regular course of briefing" by Ms. Sedillo.  Id.  Substantively, however, the Tenth Circuit reversed Michel's convictions on the unregistered firearm and firearm without a serial number counts, but sustained his conviction under Count Two – felon in possession of a firearm.  Id. at 1136.

Michel filed the instant § 2255 motion on August 17, 2007.  Docket no. 1.  On August 22, 2007, the undersigned ordered the United States to file an answer.  Docket no. 3.  On November 5, 2007, the United States filed a response to petitioner's pro se § 2255 motion.  Docket no. 8.  Attached to the United States' answer, among other things, is an affidavit from

Ms. Sedillo, dated November 2, 2007.  Id., exhibit 1.  On February 5, 2008, attorney Leon Schydlower was appointed to represent petitioner.  Docket nos. 9, 10.  On June 30, 2008, Michel filed a Supplemental Motion to Vacate pursuant to § 2255, significantly narrowing the scope of petitioner's original pro se motion by focusing entirely on the suppression issue.  Docket no. 22. On July 14, 2008, the United States filed a response in opposition to Michel's Supplemental Motion to Vacate.  Docket no. 24.

B.  Factual Background

The following factual background is taken from the Tenth Circuit's decision in Michel's case at 446 F.3d, page 1126:

On December 31, 2001, an officer for the Lovington, New Mexico, police department observed Clinton Laughrin at a convenience store putting gasoline in a gas can.  The officer, Brad Riley, watched Laughrin drive away from the store in his two-door Pontiac, accompanied by a passenger, Michel.  Laughrin had agreed to help Michel obtain fuel for his vehicle after his car ran out of gas.  Officer Riley knew Laughrin from past traffic violations and was aware his license had previously been suspended.  The officer followed the vehicle for approximately half a mile before pulling Mr. Laughrin over to determine whether he was driving with a valid license.  When Officer Riley turned on his emergency lights, he observed Michel moving around in the front seat of the car and reaching toward the back seat area.  Laughrin subsequently stopped his car under a light post, and Officer Riley illuminated the vehicle with his own lights.

As Officer Riley approached the vehicle, Michel continued to move around and reach toward the rear of the vehicle.  When Officer Riley reached the car, he asked Laughrin for his driver's license, car registration, and proof of insurance.  Laughrin admitted he did not have any paperwork with him regarding the car, but stated he had renewed his licence.  A subsequent

computerized driver's license check indicated Laughrin's license was valid.

     As Officer Riley was speaking to Laughrin, the officer used his flashlight to see inside the vehicle. He noticed what appeared to be the barrel of a gun behind the driver's seat, pointed toward the driver's side door. The gun was easily within reach of both Laughrin and Michel. Officer Riley immediately stepped back from the vehicle and ordered the men to place their hands on the dashboard and not to move. He then called for the assistance of a backup officer. Despite his directions to the men, Officer Riley observed Michel attempt to reach behind the seat toward the area where the weapon was located. The officer had to tell Michel several times to keep his hands on the car's dashboard. Officer Riley testified he did not see how close Michel got to the shotgun, nor whether he was actually specifically reaching for the gun. The officer also testified he did not have any knowledge as to how the gun came to be in Laughrin's car.

     When the backup officer arrived, Laughrin and Michel were told to exit the vehicle and were temporarily handcuffed while the officers removed the gun. Laughrin said the gun belonged to a friend, whom he did not identify. The gun, which neither had a serial number nor was registered with the National Firearms Registration and Transfer Record, was a Mossberg .410 gauge shotgun with an overall length of seventeen and a half inches and a barrel length of ten and three eights inches. The weapon was thus a sawed off shotgun.

     Neither man was arrested. After the gun was secured, one of the other officers retrieved the gas can from Laughrin's car and drove Michel back to his own vehicle. Laughrin was also permitted to leave the scene. The gun was not processed for fingerprints, but it was successfully test fired. Over a year later, a grand jury issued a seven count indictment against Michel and Laughrin.

II.  Standard of Review

A district court may grant relief under § 2255 if it determines that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."  28 U.S.C. § 2255.  The statute provides:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon,[1] determine the issues and make findings of fact and conclusions of law thereto.  If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or re-sentence him or grant a new trial or correct the sentence as may appear appropriate.

Id.

III.  Analysis

A.    Procedural Default

As a preliminary matter, the Court notes that Michel raises ineffective assistance of counsel for the first time in his § 2255 Motion to Vacate.  The Supreme Court in Massaro v.

---

[1] During a status conference in this case, counsel for both Michel and the United States agreed with the Court's determination that there were no disputed facts at issue, and therefore no reason to hold a formal evidentiary hearing.  No hearing is required where the factual matters raised by a petitioner's § 2255 writ may be resolved on the record before the court.  See United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988).  Thus, no evidentiary hearing has been held.

United States, 538 U.S. 500 (2003) held that ineffective assistance of counsel claims may be collaterally reviewed even when those claims were not raised on direct appeal.  Thus, a claim based upon ineffective assistance of counsel is an exception to the general rule that only claims raised on direct appeal may be raised on collateral review absent a showing of cause and prejudice.  See Massaro, 538 U.S. at 504 (citing United States v. Frady, 456 U.S. 152, 167-68 (1982) and Bousley v. United States, 523 U.S. 614, 621-22 (1998)).  Thus, petitioner's § 2255 Motion to Vacate is properly before the Court.

B.      Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. CONST., amend. VI.  This constitutional right to counsel has long been recognized as "the right to the effective assistance of counsel."  McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970).  The Sixth Amendment's guarantee of counsel "exists, and is needed, in order to protect the fundamental right to a fair trial."  Strickland v. Washington, 466 U.S. 668, 684 (1984).  Our adversarial system functions in a constitutional manner when effective counsel is provided to defendants because "access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution.'"  Id. at 685 (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 275-76 (1942)).

To establish ineffective assistance of counsel in this case, Michel must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993).  Michel can establish the first prong by showing Ms. Sedillo performed below the level expected from a reasonably competent attorney in criminal cases.  Strickland, 466 U.S. at 687-88.  In making this

determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690.

The motion to supplement appellate issues on appeal, filed by Ms. Sedillo on March 8, 2006, just prior to the Tenth Circuit's decision on Michel's direct appeal states, in pertinent part:

> The case evolves around a traffic stop in which co-defendant Clinton Laughrin was the driver, and Appellant Mauricio Michel was the passenger. The driver and passenger were observed by a police officer at a gas station filling up a gas can. After the driver pulled out of the gas station the officer proceeded to conduct a traffic stop due to the officer's belief from prior stops that [the] driver's license was suspended . . . . A pretrial motion to suppress was filed by the driver and an evidentiary hearing was held. Counsel for Michel did not join in the motion or preserve the issue, believing that Michel did not have standing as a passenger. Counsel for Michel incorrectly focused solely on the illegal detention and the need to show a factual nexus to the evidence sought to be suppressed . . . *Counsel for Michel completely missed the first focus of her analysis, which should have been the legality of the initial stop under the Fourth Amendment . . . . If the initial stop was a Fourth Amendment violation for the driver, it was also for the passenger and under a derivative evidence and illegal fruits claim should result in Michel's conviction being vacated as well*.

Appellant's Motion to Supplement Issues on Appeal, Michel (No. 04-2214 at docket entry 1896078) (emphasis added). In the motion, Ms. Sedillo admits she made a "grave error" because the issue was not preserved, and claims that if her motion were not to be granted, "Michel would likely be entitled to relief under a 28 U.S.C. § 2255 habeas petition for ineffective assistance of counsel." Id.

Attached to the United States' answer, however, is the November 2, 2007 affidavit from Ms. Sedillo. Docket no. 8, exhibit 1. In the affidavit, Ms. Sedillo, after stating she has practiced criminal law for fifteen years, indicates she recognized that a possible suppression issue might

exist with regard to the traffic stop. Id. at 1. In contrast with her March 2006 motion to supplement issues on appeal, Ms. Sedillo claims she "researched the issue of the traffic stop" and "didn't believe Mr. Michel would prevail on a challenge of the initial stop of the vehicle" because she "believed the discovery established that the officer had reasonable suspicion that the law was being violated." Id. at 2. After explaining the research she conducted, Ms. Sedillo contends she did not file a motion to suppress "for no other reason" than she did not believe "Michel could meet the showing required to establish standing." Id. at 6. Ms. Sedillo acknowledges that she and Michel were present during the Laughlin evidentiary hearing, but her affidavit neglects to address the discrepancy in the reasoning she used in 2006 before the Tenth Circuit when she attempted to supplement issues on direct appeal. Id.

"[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable;" Strickland, 466 U.S. at 689, therefore, the law at the time of Michel's trial with respect to the standing of passengers to challenge the legality of traffic stops is crucial to the outcome of Michel's petition. The Tenth Circuit, as early as 1995, unequivocally reiterated that passengers had standing to challenge traffic stops:

> [I]n Erwin, we concluded that a passenger had standing to challenge a traffic stop. We reasoned that the Fourth Amendment protects against unreasonable searches and that, in challenging a stop, the defendant was objecting to the seizure of his person. We saw no reason why a person's Fourth Amendment interests in challenging his own seizure should be diminished merely because he was a passenger, and not the driver, when the stop occurred.

United States v. Elyicio-Montoya, 70 F.3d 1158, 1163-1164 (10th Cir. 1995) (citing United States v. Erwin, 875 F.2d 268, 270 (10th Cir. 1989).

Thus, when Michel was stopped as a passenger in 2001, and at the time Ms. Sedillo was aware that co-defendant Laughrin had filed a motion to suppress in 2003, it had long been the law in the Tenth Circuit that Michel had standing to challenge the stop of the vehicle. The Tenth Circuit explicitly held so in <u>Elyicio-Montoya</u>. Additionally, at the time of the evidentiary hearing in Laughlin's case, the First, Fourth, Fifth, Seventh, Eighth, and Ninth Circuits had also found that when a police officer makes a traffic stop, a passenger is "seized" for purposes of the Fourth Amendment analysis, and therefore has standing to challenge the constitutionally of the stop.  <u>See</u> <u>United States v. Kimball</u>, 25 F.3d 1, 5 (1st Cir. 1994); <u>United States v. Rusher</u>, 966 F.2d 868, 874 n. 4 (4th Cir. 1992); <u>United States v. Grant</u>, 349 F.3d 192, 196 (5th Cir. 2003); <u>United States v. Powell</u>, 929 F.2d 1190, 1195 (7th Cir. 1991); <u>United States v. Ameling</u>, 328 F.3d 443, 446-447 n. 3 (8th Cir. 2003); <u>United States v. Twilley</u>, 22 F.3d 1092, 1095 (9th Cir. 2000).

As Ms. Sedillo admitted in her motion to supplement issues on appeal before the Tenth Circuit, she "incorrectly focused solely on the illegal detention and the need to show a factual nexus to the evidence sought to be suppressed." Appellant's Motion to Supplement Issues on Appeal, <u>Michel</u> (No. 04-2214 at docket entry 1896078). Thus, I concur that Ms. Sedillo made a "grave error" in not raising the constitutionality of the traffic stop as it pertained to her client, a passenger in Laughlin's vehicle. Although "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengable," <u>Strickland</u>, 466 U.S. at 691, Ms. Sedillo's research in this case concerning Michel's standing to challenge the constitutionality of the traffic stop did not come after a thorough investigation of the law and facts.

Ms. Sedillo, in her 2007 affidavit, indicates she could find no Tenth Circuit cases that an

10

officer's prior first hand knowledge that a person had no valid license was not sufficient justification for a traffic stop. Docket no. 8, exhibit 1 at 2. Though this may be true, there also was no authority that affirmatively held that a police officer has sufficient justification for a traffic stop if he had knowledge *at least twenty weeks prior to the stop* that a driver had no valid license when in fact the driver did have a valid license at the time of the stop.[2] Ms. Sedillo's

---

[2] During the evidentiary hearing on Laughrin's motion to suppress, at which Ms. Sedillo and Michel were present, the following exchange occurred between Laughrin's attorney and Officer Riley before the visiting District Judge:

> Q: Officer Riley, I'd like to go to the original stop where the shotgun was found under the seat. You said you saw Mr. Laughrin at the Town & Country?
> A: Yes, sir.
> Q: And you saw him getting into a vehicle?
> A: That's correct.
> Q: And that he drove away in that vehicle?
> A: Yes, sir.
> Q: And how far from the Town & Country to the place where you stopped him?
> A: Approximately half a mile or so.
> Q: Okay. Is there any reason you took that long to stop him?
> A: Just observing the vehicle.
> Q: But the reason you stopped him was that you thought he might not have a driver's license; is that correct?
> A: Yes, sir.
> Q: Okay. And you subsequently found out he did have a valid driver's license, but not on him personally?
> A: That's correct.
> Q: When was the last time before that stop that you'd known that he didn't have a driver's license?
> A: Prior to my attending the academy, the law enforcement academy.
> Q: And how long was the police academy?
> A: It was twenty weeks.
> Q: So it was at least twenty weeks that had passed –
> A: Yes, sir.
> Q: – between the time –
> A: Yes, sir.
> Q: – the last time you knew he didn't have a license and this time?
> A: That's correct.
> Q: Is it possible for someone to get a driver's license replaced in twenty weeks?
> A: If it's reinstated, it's possible, yes, sir.

decision to forego a motion to suppress was not a decision that "'might be considered sound trial strategy,'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)), or "the result of reasonable professional judgment." Id. at 690. Rather, it was objectively unreasonable and outside "the wide range of professionally competent assistance." Id.

    I find Michel has established the first prong of Strickland. The record indicates Ms. Sedillo performed below the level expected from a reasonably competent attorney when she failed to join Laughlin's motion to suppress, or file a separate motion. Michel faced considerable jail time if convicted, but clearly had standing to challenge the constitutionality of the stop in the Tenth Circuit in 2003. As Ms. Sedillo herself stated in a motion before the Tenth Circuit in 2006, "[c]ounsel for Michel completely missed the first focus of her analysis, which should have been the legality of the initial stop under the Fourth Amendment." Appellant's Motion to Supplement Issues on Appeal, Michel (No. 04-2214 at docket entry 1896078). Ms. Sedillo's decision on the facts of this particular case, viewed at the time of counsel's decision, was deficient.

    To establish the second prong of Strickland, Michel must show that Ms. Sedillo's

---

> Q: Did you make any checks while you were observing the vehicle as to whether or not – did you call in and check to see whether he had a valid driver's license?
> A: No, I didn't.
> Q: Why didn't you do that?
> A: The way that we've always made our traffic stops and done things is, the vehicle is stopped, we identify the driver, and then do our checks.
> Q: So the only reason that basically you stopped the vehicle is, some twenty weeks before, you knew that he didn't have a driver's license?
> A: That's correct.
> Q: And that's the sole reason you stopped the vehicle?
> A: That's correct.

United States v. Laughrin, et al., CR 03-127, Motion to Suppress Transcript at 25:20-27:20.

deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-370 (1993). Here, if Ms. Sedillo would have filed a motion to suppress on Michel's behalf, or merely joined in the motion that Laughlin filed, the Tenth Circuit would have ultimately reversed his conviction because the stop at issue was unconstitutional. Trial counsel's error in this case undermines my confidence in the ultimate outcome. Therefore, I find Michel was prejudiced by his trial counsel's ineffectiveness with respect to the suppression issue and is entitled to relief pursuant to 28 U.S.C. § 2255.[3]

C.   Conclusion

The Sixth Amendment right to the effective assistance of counsel is designed to afford those accused of crimes with a fundamentally fair trial. To this end, defendants are entitled to the assistance of counsel who exhibit the requisite skill, knowledge, and diligence to meaningfully test the prosecution's case. When counsel's performance is constitutionally

---

[3] Michel, in his August 17, 2007 § 2255 motion, asserts Ms. Sedillo was deficient in other respects – failing to file any pre-trial motions or objections, failing to request the government to prove the constitutional validity of petitioner's prior state convictions, and failing to protect petitioner's right to a fair trial by violating his Fifth and Sixth Amendment rights. Docket no. 1. Michel also alleges the District Court lacked jurisdiction in his case based on a defective indictment because the charging instrument failed to allege a violation of 18 U.S.C. § 922(g)(1) and because the allegations regarding his prior convictions were incorrect as a matter of law. Petitioner's counsel-drafted First Supplemental Motion to Vacate and Set Aside Conviction and Sentence only addresses the first ground for relief in the original motion – that Ms. Sedillo was ineffective for failing to file or join in a motion to suppress that would have led to Michel's acquittal. The Court has considered the facts and arguments presented by Michel relevant to the other claims raised in the original motion, but finds no basis for recommending a finding of ineffective assistance of counsel or recommending any other relief on these additional grounds.

13

deficient in the sense that the adversarial process has not functioned in a manner assuring a just result or fair trial, relief under § 2255 is warranted. Notwithstanding her well-deserved reputation as seasoned criminal defense lawyer, Ms. Sedillo failed, in this case, to meet the standard of "counsel" guaranteed by the Sixth Amendment. Counsel's failure to make an informed decision about whether to file a motion to suppress or join in co-defendant Laughrin's motion to suppress constitutes ineffective assistance of counsel under <u>Strickland</u>. Consequently, it is hereby recommended that Michel's Application for Writ of Habeas Corpus be granted and Michel's conviction for felon in possession of a firearm be ordered vacated.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the Proposed Findings and Recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE